NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12059

CLIFFORD E. GEORGE  vs.  JACQUELYN A. GEORGE.


Suffolk.     September 6, 2016. - November 23, 2016.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
Budd, JJ.


Divorce and Separation, Alimony, Modification of judgment.


Complaint for divorce filed in the Suffolk Division of the
Probate and Family Court Department on May 29, 2001.

A complaint for modification, filed on August 26, 2013, was
heard by Jeremy A. Stahlin, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Brian J. Kelly for Clifford E. George.
Matthew P. Barach (Alessandra Petrucelli with him) for
Jacquelyn A. George.


LOWY, J.  Clifford E. George and Jacquelyn A. George

married in 1989 and divorced in 2002.[1]  Their separation

agreement, and the judgment that followed, provided that

_____

[1] Because they share a last name, we refer to the parties by
their first names.

Clifford would pay Jacquelyn monthly alimony. In 2013, Clifford filed a complaint for modification of the divorce judgment that sought, among other things, to modify his alimony obligation based on G. L. c. 208, § 49 (b), part of the Alimony Reform Act, St. 2011, c. 124 (act), which became effective on March 1, 2012, nearly ten years after the parties' divorce. Section 49 (b) provides that general term alimony for marriages lasting more than ten years but fewer than fifteen years shall not continue for "longer than [seventy] per cent of the number of months of the marriage," G. L. c. 208, § 49 (b) (3), a process by which a judge can deviate from the durational limit, where doing so is "required in the interests of justice." G. L. c. 208, § 49 (b). The act also provided a phase-in schedule for when complaints for modification based on the new durational limits could be brought for alimony obligations that predated the effective date of the act. St. 2011, c. 124, §§ 4, 5.

In his memorandum of decision, the Probate and Family Court judge denied Clifford's complaint for modification because he found that deviation beyond the durational limits of the act was warranted. Clifford appealed from this judgment to the Appeals Court, and we transferred the case to this court on our own motion.

We affirm the judge's denial of relief but on the ground that Clifford's complaint was filed prematurely. However, we

utilize this opportunity to set forth guidance for how the "interests of justice" standard of § 49 (b) should be applied when determining whether deviating beyond the durational limits of the act is warranted.

Background.  Clifford and Jacquelyn married in Massachusetts in June, 1989.  The parties were divorced in November, 2002.  Their separation agreement merged into the divorce judgment, except for the division of property provisions.  According to one of the merged portions, Clifford was to pay Jacquelyn $1,800 per month in alimony, subject to termination "upon the earliest to occur of [Clifford's] death, [Jacquelyn's] death, [Jacquelyn's] remarriage or July 30, 2026." The unmerged portion of the separation agreement and the divorce judgment gave Jacquelyn the former marital home and required Clifford to pay for her health insurance.

On August 26, 2013, Clifford filed a complaint for modification, requesting that the  divorce judgment be modified in several ways:  to allow Clifford to cease paying for Jacquelyn's health insurance; to order Jacquelyn to refinance and remove Clifford's name from the mortgage on the former marital home; and to terminate alimony payments.  Clifford asserted that changed circumstances warranted such modification. Specifically, he claimed that the cost of health insurance had more than doubled since the time of divorce, his ability to

secure credit for his business had been harmed by Jacquelyn's refusal to refinance the mortgage, and the durational limits of the act called for the termination of alimony payments based on the length of the parties' marriage.

Following a pretrial conference in May, 2014, the judge issued temporary orders, ruling that there were no remaining issues relating to the health insurance or mortgage, and requested that the parties submit briefs and an agreed statement of facts as to the alimony issue. After reviewing the materials submitted by the parties, the judge issued a "modification judgment" and memorandum of decision denying termination of alimony payments.

The judge found, and the parties do not contest, that the parties' marriage lasted 143.97 months (approximately twelve years) and that based upon the act's durational limits, Clifford's alimony payments presumptively should have ended after 100.78 months, or on April 23, 2011.[2] G. L. c. 208, § 49 (b) (3). The judge noted that for divorce judgments predating the act arising from marriages that lasted as long as the Georges', uncodified § 5 of the act requires complaints for modification based solely on durational limits to be filed no earlier than March 1, 2015, which was more than one year later

---

[2] The judge measured the length of marriage from the date of marriage to the date of service of the divorce papers.

than the date that Clifford's complaint for modification was filed. St. 2011, c. 124, § 5 (3). Nonetheless, the judge went on to evaluate whether deviation from the durational limits was warranted, stating that he was obligated to do so. The judge concluded that deviation was warranted because, he theorized, Jacquelyn "bargained for" a specific alimony termination date in exchange for a certain division of property and, had Jacquelyn known that alimony would terminate before the date contained in the agreement, she would "likely have insisted on different property division terms." As mentioned, Clifford appealed from the judge's decision to the Appeals Court, and we transferred the case to this court on our own motion.[3] In his brief, Clifford makes clear that his appeal focuses only on the judge's decision that deviation from the durational limits was warranted, and on how such deviation issues should be analyzed.

Discussion. a. The Alimony Reform Act. The act became effective on March 1, 2012, and deemed all alimony awards that predated it to be general term alimony. St. 2011, c. 124, §§ 4 (b), 7. Under the act, general term alimony may be

---

[3] After the modification judgment was issued, Jacquelyn filed a motion for attorney's fees and costs. A motion hearing was held in December, 2014. In a memorandum of decision following the hearing, as well as in a supplemental modification judgment, the judge awarded her certain attorney's fees and costs. Although Clifford appealed from some of the award, he stated in his brief that he is no longer appealing any issue involving attorney's fees. The issue is therefore waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

modified in amount and duration upon a material change of circumstance. G. L. c. 208, § 49 (e). The act also provides presumptive termination dates for general term alimony obligations for marriages lasting fewer than twenty years.[4] G. L. c. 208, § 49 (b). A judge may deviate beyond these termination dates if the judge makes a written finding that doing so is in the "interests of justice." G. L. c. 208, § 49 (b).

Uncodified § 4 (b) of the act states: "Existing alimony awards which exceed the durational limits established in said [§] 49 of said [G. L. c.] 208 shall be modified upon a complaint for modification without additional material change of

_____

[4] The presumptive termination dates -- which are expressed as percentages of the length of the marriage -- for payment of general term alimony are set forth in G. L. c. 208, § 49 (b) (1)-(4):

> "(1) If the length of the marriage is [five] years or less, general term alimony shall continue for not longer than one-half the number of months of the marriage.

> "(2) If the length of the marriage is [ten] years or less, but more than [five] years, general term alimony shall continue for not longer than [sixty] per cent of the number of months of the marriage.

> "(3) If the length of the marriage is [fifteen] years or less, but more than [ten] years, general term alimony shall continue for not longer than [seventy] per cent of the number of months of the marriage.

> "(4) If the length of the marriage is [twenty] years or less, but more than [fifteen] years, general term alimony shall continue for not longer than [eighty] per cent of the number of months of the marriage."

circumstance, unless the court finds that deviation from the durational limits is warranted."  St. 2011, c. 124, § 4 (b).  Thus, the durational limits are retroactive and apply to alimony awards that predate the act.  Rodman v. Rodman, 470 Mass. 539, 544 (2015); Chin v. Merriot, 470 Mass. 527, 536 (2015); Holmes v. Holmes, 467 Mass. 653, 661 n.9 (2014).  Pursuant to uncodified § 4, a payor spouse with an alimony obligation that existed before March 1, 2012, and that exceeds the act's durational limits, need only file a complaint for modification to demonstrate a material change in circumstances.  St. 2011, c. 124, § 4 (b).  Nonetheless, a judge may order alimony to continue beyond the durational limit if the judge finds that deviation is "required in the interests of justice."  Id.

Uncodified § 5 provides a phase-in period for when complaints for modification of existing alimony awards may be filed by payor spouses "solely because the existing alimony judgment exceeds the durational limits."  St. 2011, c. 124, § 5.[5] This phase-in period was created to avoid a rush to the

_____

[5] Statute 2011, c. 124, § 5 provides: "Any complaint for modification filed by a payor under [§] 4 of this act solely because the existing alimony judgment exceeds the durational limits of [G. L. c. 208, § 49,] may only be filed under the following time limits:

". . .

"(3) Payors who were married to the alimony recipient [fifteen] years or less, but more than [ten] years, may file a modification action on or after March 1, 2015."

courthouse by payor spouses upon passage of the act.  See Doktor v. Doktor, 470 Mass. 547, 551 n.6 (2015).  For marriages lasting fewer than fifteen years but more than ten years -- as is the case here -- that date is March 1, 2015.  St. 2011, c. 124, § 5 (3).

As Clifford admits, his complaint for modification was filed before the permissible filing date set out in uncodified § 5 of the act.  In light of the premature filing, dismissal of Clifford's complaint was appropriate, and we affirm the judge's denial of relief on that ground.  See Holmes, 467 Mass. at 661 n.9.[6]

b.  Deviation standard.  We now set forth guidelines for how a judge of the Probate and Family Court should apply the G. L. c. 208, § 49 (b) "interests of justice" standard.  The identity of the moving party will depend on whether the marriage ended before the act's effective date.  For marriages that ended before that date, the payor spouse will be the moving party, and for marriages that ended after that date, the recipient spouse

---

[6] Clifford brought two additional claims with his complaint for alimony modification.  The judge ruled that these claims were frivolous and without merit, and they were no longer part of the case when he considered and decided Clifford's request to terminate the alimony obligation.  Still, the judge, recognizing our statement in Holmes v. Holmes, 467 Mass. 653, 661 n.9 (2014), that claims not filed "solely because" the existing alimony judgment exceeded the act's durational limits may be considered by a probate judge, went on to address the issue whether deviation was warranted.  See St. 2011, c. 124, § 5.

will be the moving party.  See G. L. c. 208, § 53 (e) ("In setting an initial alimony order, or in modifying an existing order, the court may deviate from duration and amount limits for general term alimony . . . upon written findings that deviation is necessary."); St. 2011, c. 124, § 4 (b) (durational limits apply to alimony awards that predate act).

In either case, we conclude that when disputes of fact arise the judge must make written findings based on evidence to determine whether the "interests of justice" require alimony payments to continue beyond the durational limits of the act. The recipient spouse bears the burden of proving by a preponderance of the evidence that deviation beyond the presumptive termination date is "required in the interests of justice."  G. L. c. 208, § 49 (b).  See St. 2011, c. 124, § 4 (existing alimony award exceeding durational limits is material change of circumstance).  Further, a judge should evaluate the circumstances of the parties in the here and now; that is, as they exist at the time the deviation is sought, rather than the situation as it existed at the time of divorce.  See Schuler v. Schuler, 382 Mass. 366, 377-378 (1981) (affirming denial of alimony modification where judge found "at the time of the modification hearing [payor spouse] had the ability to make the payments"); Katz v. Katz, 55 Mass. App. Ct. 472, 483 (2002) (reversing judge's decision to terminate alimony where payor

spouse had income-generating assets "at the time of the hearing on the complaint for modification"). If relevant factors that existed at the time of the divorce persist when the complaint for modification is filed, a judge may properly consider them. For example, if at the time of divorce a spouse was disabled and that disability was taken into consideration in setting the initial alimony award, and if that disability persists when the payor spouse files a complaint for modification, the judge may properly consider the impact the disability continues to have on the recipient spouse in determining whether deviation beyond the act's durational limits is "required in the interests of justice." G. L. c. 208, § 49 (b).

The importance of this temporal focus is shown in the instant case. The judge concluded that had Jacquelyn known that her alimony would terminate prior to the date in the merged portion of the separation agreement, she would likely have "bargained for" a different division of property. This analysis was flawed in two respects. First, there was nothing in the agreed statement of facts to support this finding. Second, this logic might well prevent nearly all payor spouses with alimony obligations predating the act from ever gaining the benefit of the act's durational limits, because recipient spouses could argue that, had they known that their alimony payments would be affected by the act, they would have negotiated their separation

agreement differently.  This is in direct contravention of the Legislature's intent that the durational limits apply to preexisting alimony awards.  See St. 2011, c. 124, § 4 (b); Rodman, 470 Mass. at 544; Chin, 470 Mass. at 536; Holmes, 467 Mass. at 661 n.9.

"Although a 'judge has broad discretion when awarding alimony under the [act],' . . . the judge must consider all relevant, statutorily specified factors . . . ."  Duff-Kareores v. Kareores, 474 Mass. 528, 535 (2016), quoting Zaleski v. Zaleski, 469 Mass. 230, 235 (2014).  Here, the appropriate statutory factors to be considered are set forth in G. L. c. 208, § 53 (e):

> "(1) advanced age; chronic illness; or unusual health circumstances of either party; (2) tax considerations applicable to the parties; (3) whether the payor spouse is providing health insurance and the cost of health insurance for the recipient spouse; (4) whether the payor spouse has been ordered to secure life insurance for the benefit of the recipient spouse and the cost of such insurance; (5) sources and amounts of unearned income, including capital gains, interest and dividends, annuity and investment income from assets that were not allocated in the parties['] divorce; (6) significant premarital cohabitation that included economic partnership or marital separation of significant duration, each of which the court may consider in determining the length of the marriage; (7) a party's inability to provide for that party's own support by reason of physical or mental abuse by the payor; (8) a party's inability to provide for that party's own support by reason of that party's deficiency of property, maintenance or employment opportunity; and (9) upon written findings, any other factor that the court deems relevant and material."

Conclusion.  We affirm the denial of relief to the plaintiff on the grounds that his complaint was premature.  See G. L. c. 208, § 49; St. 2011, c. 124, § 5.  The plaintiff may refile his complaint for modification, and it should be considered under the standard articulated today.[7]

Judgment affirmed.

---

[7] We deny Jacquelyn's request for appellate attorney's fees, as she has not provided a legal basis for such an award.  See Fabre v. Walton, 441 Mass. 9, 10-11 (2004).